UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BENNIE L. BROWN,

      Petitioner,

v.                          CASE NO.  8:09-cv-934-T-23AEP

SECRETARY, Department of
Corrections,

      Respondent.

_____/

## **ORDER**

Brown petitions under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions for burglary of an unoccupied dwelling and petit theft, for which he serves a fifteen-year sentence.  Numerous exhibits ("Respondent's Exhibit __") support the response to Brown's petition.  (Doc. 11)  The respondent asserts no challenge to the petition's timeliness.  The respondent's procedural default argument is rejected based on *Cunningham v. State*, __ So. 3d __, 2012 WL 413812 (Fla. 2nd DCA 2012).[1]  Nevertheless each of Brown's claims lacks merit.

---

[1] Between December, 2000, and September, 2010, the Second District Court of Appeal placed no obligation on post-conviction counsel to brief each claim summarily denied by the post-conviction court.  Brown's failure to brief the summarily denied claims caused no procedural default because the claims were automatically reviewed by the appellate court under that court's internal procedures during that time.  Because Brown's appeal of the trial court's denial of his post-conviction motion was filed in 2006, subparts A, D, and E are not procedurally defaulted.

## FACTS[2]

In 2004 Brown was arrested for breaking and entering a mobile home and stealing jewelry worth over forty-three thousand dollars.  Although Brown was charged with burglary of an unoccupied dwelling and grand theft, a jury found Brown guilty of burglary of an unoccupied dwelling and the lesser included offence of petit theft.  Brown received a fifteen-year sentence for his burglary conviction under the provisions of the Prison Release Reoffender Act ("PRR").

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2] This summary of the facts derives from Brown's initial brief on appeal.  (Respondent's Exhibit 2 at 4)

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court

interpreted this deferential standard:

In sum, § 2254(d)(1) places a new constraint on the power of a federal
habeas court to grant a state prisoner's application for a writ of habeas
corpus with respect to claims adjudicated on the merits in state court.
Under § 2254(d)(1), the writ may issue only if one of the following
two decision that (1) "was contrary to . . . clearly established Federal
Law, as determined by the Supreme Court of the United States" or
(2) "involved an unreasonable application of . . . clearly established
Federal law, as determined by the Supreme Court of the United
States."  Under the "contrary to" clause, a federal habeas court may
grant the writ if the state court arrives at a conclusion opposite to that
reached by this Court on a question of law or if the state court decides
a case differently than this Court has on a set of materially
indistinguishable facts.  Under the "unreasonable application" clause, a
federal habeas court may grant the writ if the state court identifies the
correct governing legal principle from this Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. at 694.  "As a condition for obtaining

habeas corpus from a federal court, a state prisoner must show that the state court's

ruling on the claim being presented in federal court was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any

possibility for fair-minded disagreement." *Harrington v. Richter*, ___ U.S. ___, 131

S. Ct. 770, 786-87 (2011).  *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001)

("It is the objective reasonableness, not the correctness *per se*, of the state court

decision that we are to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693  (2002). Federal courts must afford due deference to a state court's decision.  "AEDPA prevents defendants-and federal courts-from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."  *Renico v. Lett*, ____ U.S. ____, 130 S. Ct. 1855, 1866 (2010).  *See also Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court affirmed Brown's convictions and sentence on direct appeal.  (Respondent's Exhibit 4)  Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Brown's subsequent Rule 3.850 motion to vacate.  (Respondent's Exhibit 14)  The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state

court's decision does not lessen the deference that it is due."  *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 131 S. Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward looking language requires an examination of the state court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398.  Brown bears the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state

court's rejection of Brown's post-conviction claims warrants deference in this case.

(Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 9 and 10)

## INEFFECTIVE ASSISTANCE OF COUNSEL

Brown alleges that trial counsel rendered ineffective assistance, a difficult

claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the

ground of ineffective assistance of counsel are few and far between." *Waters v.*

*Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d

384, 386 (11th Cir. 1994)).  *Strickland v. Washington*, 466 U.S. 668 (1984), governs an

ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well
> settled and well documented.  In *Strickland v. Washington*, 466 U.S.
> 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set
> forth a two part test for analyzing ineffective assistance of counsel
> claims.  According to *Strickland*, first, the defendant must show that
> counsel's performance was deficient.  This requires showing that
> counsel made errors so serious that counsel was not functioning as the
> "counsel" guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so serious as
> to deprive the defendant of a fair trial, a trial whose result is reliable.
> *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent

prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When

applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Brown must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Brown must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on

investigation."  466 U.S. at 690-91.  Brown cannot meet his burden merely by

showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have
> done.  Nor is the test even what most good lawyers would have done.
> We ask only whether some reasonable lawyer at the trial could have
> acted, in the circumstances, as defense counsel acted at trial . . . .  We
> are not interested in grading lawyers' performances; we are interested
> in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United

States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers,

in every case, could have done something more or something different.  So,

omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent

or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger

v. Kemp*, 483 U.S. 776, 794 (1987)).  *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983)

(counsel has no duty to raise a frivolous claim).

    Brown must prove that the state court's decision was "(1) . . . contrary to, or

involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States or (2) . . . based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding."  28 U.S.C. § 2254(d).  Sustaining a claim of ineffective assistance

of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d)

are both 'highly deferential,' and when the two apply in tandem, review is 'doubly'

so."  *Richter*, 131 S. Ct. at 788.  *See also Pinholster*, 131 S. Ct. at 1410 (A petitioner

must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."),

and *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double

deference is doubly difficult for a petitioner to overcome, and it will be a rare case in

which an ineffective assistance of counsel claim that was denied on the merits in state

court is found to merit relief in a federal habeas proceeding.").

 In denying Brown's motion for post-conviction relief, the state court

specifically recognized that *Strickland* governs a claim of ineffective assistance of

counsel.  (Respondent's Exhibit 9 at 2)  Because the state court rejected the claims

based on *Strickland*, Brown cannot meet the "contrary to" test in Section 2254(d)(1).

Brown instead must show that the state court unreasonably applied *Strickland* or

unreasonably determined the facts.  In determining "reasonableness," a federal

petition for the writ of habeas corpus authorizes determining only "whether the state

habeas court was objectively reasonable in its *Strickland* inquiry," not an independent

assessment of whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d

1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).  The presumption

of correctness and the highly deferential standard of review require that the analysis

of each claim begin with the state court's analysis.

## **GROUND ONE**

Brown asserts a general ground of ineffective assistance of counsel under which he asserts five subparts.  Based on *Cunningham v. State*, 2012 WL 413812 (Fla. 2nd DCA 2012), respondent's procedural default argument for subparts A, D and E is rejected.  Consequently, each subpart is addressed on the merits.

Subpart A:

Brown alleges that trial counsel was ineffective for not objecting to the trial court's sentencing Brown under PRR.  (Doc. 1 at 6(a))  The post-conviction court summarily denied Brown's claim.  (Respondent's Exhibit 9 at 3):

> The Defendant asserts that his counsel was ineffective for failing to object to his sentence pursuant to PRR because the offence in which the jury convicted him is not an enumerated offence in § 775.082 (9)(a)(1), Fla. Stat.  The Defendant asserts that he was prejudiced by his counsel's omission and his sentence is illegal.
>
> The Defendant is mistaken.  Pursuant to § 775.082 (9)(a)1q, Fla. Stat. (2004), burglary of a dwelling or burglary of an occupied structure is an enumerated offence that qualifies a defendant under PRR.  The Defendant was convicted of burglary of an unoccupied dwelling pursuant to § 810.02(1)[3] and (3)(b)[4].  Burglary of an unoccupied dwelling is included in burglary of a dwelling.  Accordingly, the Court denies the Defendant's motion on this basis.

---

[3] "For offenses committed after July 1, 2001 'burglary' means: 1. entering a dwelling, a structure, or conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter."  § 810.02(1)(b), Fla. Stat.

[4] "Burglary is a felony of the second degree, punishable as provided in § 775.082, § 775.083, or § 77.084, if, in the course of committing the offense, the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in a: dwelling, and there is not another person in the dwelling at the time the offender enters or remains."  § 810.02(3)(b), Fla. Stat.

The post-conviction court reasonably determined the state law and properly applied S*trickland* in denying Brown's claim.  An objection by counsel was meritless under the circumstances and a failure to raise a meritless claim is not deficient performance.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983); *Ojeda v. Sec'y for Dep't. of Corr.*, 279 Fed.Appx. 953, 955 (11th Cir. 2008).  Because Brown fails to meet the first component of *Strickland*, the claim in subpart A lacks merit.

Subpart B:

Brown alleges that his trial counsel rendered ineffective assistance by prohibiting him from testifying.  (Doc. 1 at 6(b))  Brown alleges that trial counsel advised against his testifying because the state would discredit him by disclosing his criminal history.  The post-conviction court reasonably applied *Strickland* in ruling that the advice was neither deficient performance nor prejudicial.

The post-conviction court found that Brown's trial counsel properly understood that if Brown testified the state could disclose his prior convictions to the jury.  (Respondent's Exhibit 10 at 2-3)  Under Section 90.610(1), Fla. Stat. (2004):

> A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment. . . .

Trial counsel's advice about the possible disclosure of Brown's convictions was accurate under state law.  Further, federal courts hold that preventing the disclosure

of prior convictions that would prejudice the defendant is a sensible reason for advising against a defendant testifying. *United States v. Teague*, 953 F.2d 1525, 1533 n.9 (11th Cir. 1992). "If counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify." *Teague*, 953 F.2d at 1533. The post-conviction court's conclusion that trial counsel's advice was not deficient performance is consistent with *Strickland*.

Brown also fails to meet the prejudice component of *Strickland* by not demonstrating how his self-serving testimony would defeat the incriminating evidence presented at trial. Brown contends that the jury would have found him guilty of a lesser included offense if he testified and offered his version of the events. Brown's allegations are unconvincing (1) because of the large amount of incriminating evidence presented at trial and (2) because his proposed testimony is incriminating.

First, the owner of the home testified that Brown had no permission to enter her residence. (Respondent's Exhibit 1 vol. 2 at 45) Because police discovered his fingerprints inside the residence, Brown was arrested and questioned, during which Brown admitted that he was inside the residence and that he ate food from inside the residence. (Respondent's Exhibit 1 vol. 2 at 32-34 and 55) With this evidence, the post-conviction court was objectively reasonable in concluding that Brown failed to

show the reasonable probability of a different outcome if he testified.  (Respondent's Exhibit 10 at 3)

Second, Brown's proposed testimony details his commission of a burglary. Brown would have testified that he entered the residence with "Brian," ate a sandwich, drank two beers, and left.  (Doc. 18 at 3)  Brown asserts that this testimony provides a reasonable probability that the jury would not have convicted him of burglary because he stole no jewelry.  (Doc. 18 at 7)  However, Brown misunderstands the crime of "burglary of an unoccupied dwelling," which is the entering of an unoccupied residence with the intent to commit an offense in the residence.  § 810.02(1)(b), Fla. Stat. (2004).  Brown's proposed testimony would have provided sufficient evidence for a burglary conviction because he would have admitted that he entered an unoccupied residence with the intent to steal food.

Brown alleges that he would have testified that a man named "Brian" invited him into the residence.  However, the weight a jury would give Brown's testimony is speculative because no corroborating evidence shows that "Brian" existed.  Further, the available evidence from Detective Hartman suggests that Brian did not exist. (Respondent's Exhibit 1 vol. 2 at 55)  Brown fails to show by a reasonable probability that his self-serving testimony would overcome both the evidence from Detective Hartman and the adverse effect of the prosecution's disclosing his prior convictions. The post-conviction court reasonably determined the facts and, consistent with *Strickland*, held that the outcome of the trial was likely unaffected by Brown's not

testifying.  (Respondent's Exhibit 10 at 3)  Subpart B lacks merit because Brown fails

to meet either component of *Strickland*.

Subpart C and D:

 Brown alleges that trial counsel was ineffective for failing to fully investigate

and present the affirmative defense that Brown was invited inside by a person he

believed owned the mobile home.  (Doc. 1 at 6(c))  Brown informed his counsel that

the other person was a white male named "Brian" who drove an old blue Ford

F-10 truck.[5]  (Doc. 1-2 Exhibit (S) at 8)  Brown failed to provide a last name, license

plate number, or any other information that could help locate "Brian."  The

post-conviction court found that Brown was unreasonable in expecting that counsel

could locate "Brian" based on this limited description.  (Respondent's Exhibit 9 at 5)

 The record shows that, during cross-examination and closing arguments, trial

counsel used what little information Brown provided.  Trial counsel cross-examined

Detective Hartman about his investigative efforts to locate "Brian."  (Respondent's

Exhibit 1 vol. 2 at 55)  In closing arguments, counsel asserted that Brown always

maintained that he was invited into the home by a man named "Brian."  Counsel

argued to the jury that it was a "faulty assumption to say that merely because Mr.

Brown was there" then beyond a reasonable doubt Brown was the burglar because it's

equally possible to assume that "Brian" was the burglar.  (Respondent's Exhibit 1

―――――――――――――

[5] The Ford F-10 is a precursor to the Ford F-150.

- 14 -

vol. 2 at 80)  Based on the limited information Brown provided, the post-conviction court reasonably concluded that counsel's efforts in both investigating "Brian" and presenting the invitation defense fell within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 690.

The post-conviction court's holding is consistent with *Strickland*.  No deficient performance occurred because counsel's decision to limit the investigation was a reasonable judgment based on the insufficient information provided by Brown. *Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").  The standard is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."  *White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Brown fails to show that "no reasonably competent attorney" would decline to exhaustively investigate and center an entire defense on the alleged invitation from an unidentifiable person.  *See Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (*en banc*).

Brown's claim in subpart C also fails to meet the prejudice component of *Strickland*.  Brown provides no argument on the issue of prejudice other than the bare allegation that the lack of investigation by counsel requires a reversal of his conviction.  (Doc. 1-2 Exhibit (S) at 8)  Brown shows no probability that "Brian" was

able to testify and that the testimony would have altered the verdict by favoring the defense enough to overcome Brown's incriminating statements.  (Respondent's Exhibit 1 vol. 2 at 33-35 and 55)  Brown alleges that if counsel had fully investigated "Brian," counsel could have found that an "F-10 pickup truck driven by a white male was in the area of the crime."  (Doc. 1-2 Exhibit (S) at 7)  Brown proves no reasonable probability that this evidence would both neutralize the incriminating evidence and cause a different outcome.  *Strickland*, 466 U.S. at 694.  Because Brown meets neither component of *Strickland*, subpart C lacks merit.

Brown alleges in subpart D that counsel was ineffective for not presenting in opening statements both the theory of invitation and the theory that Brown was guilty of only the lesser included offense of trespass.  (Doc. 1 at 6(c))  Brown alleges that his counsel was deficient for not zealously presenting the two theories to the jury and failing to cross-examine Detective Hartman about Brown's version of the facts.  (Doc. 1-2 Exhibit (S) at 9)  Brown asserts that counsel's omissions were prejudicial.

The post-conviction court ruled that the record refutes the claim of prejudice because the invitation defense was presented to the jury throughout the trial.  (Respondent's Exhibit 9 at 6)  On cross-examination, Brown's counsel questioned Detective Hartman about whether Brown was invited into the residence and whether he had investigated the man named "Brian."  (Respondent's Exhibit 1 vol. 2 at 55)  During closing arguments counsel also emphasized the defense theory that "Brian" had invited Brown into the residence.  (Respondent's Exhibit 1 vol. 2 at 80)

- 16 -

Assuming deficient performance, Brown fails to explain how the omissions in

opening statements continued to prejudice Brown after the invitation defense was

presented in cross-examination and in closing arguments.   Consequently, subpart D

lacks merit.

Subpart E:

Brown alleges that his counsel rendered ineffective assistance by not arguing

that a *Miranda* violation occurred when law enforcement allegedly failed to advise

Brown that he had the right to counsel during interrogation.  (Doc. 1 at 6(c))  Brown

fails to challenge the post-conviction court's reasoning in denying the claim in

subpart E.  (Respondent's Exhibit 9 at 7):

> The defendant alleges that he informed his counsel that he gave a
> statement to police prior to being given his proper *Miranda* Warning.
> In support, the defendant asserts that he was unaware that *Miranda*
> Warnings require advisement on the right to have counsel appointed to
> him.  The Defendant contends that his counsel failed to inform him
> that *Miranda* required this.  The Defendant claims he was prejudiced
> by his counsel's omission because if he had attacked the *Miranda*
> violation his confession would not have been introduced to the jury.
>
> The record refutes the Defendant's contention.  The Defendant was
> arrested on September 14, 2004, and on September 15, 2004, the
> Defendant signed an invocation of constitutional rights in which he
> invoked his right to remain silent and right to counsel.  Clearly, the
> Defendant was aware of his right to counsel.  Thus the Defendant's
> motion on this basis is denied.

Brown alleges that counsel failed to ascertain whether law enforcement

advised him that he had a right to counsel during his interrogation.  (Doc. 1-2

Exhibit (S) at 11)  To the contrary, counsel knew that law enforcement specifically

informed Brown about his right to counsel because Brown had invoked that right by signing an invocation-of-rights form.  (See Respondent's Exhibit 1 vol. 1 at 9)  Brown alleges that his counsel offered "misleading information" when he advised Brown that the police were required to read him his *Miranda* rights and that those rights applied to an interrogation.  (Doc. 1-2 Exhibit (S) at 11)  That advice is accurate under *Miranda* precedent and not deficient representation.

The record shows that Brown gave his statements voluntarily after he invoked his right to counsel.  Detective Hartman testified that Brown resumed communications and offered a statement the day after he signed the form invoking his constitutional rights.  (Respondent's Exhibit 1 vol. 2 at 52)  Brown fails to allege that his resumption of communication occurred because "his will was overborne" by law enforcement's impermissible interrogation tactics.  *Dickerson v. United States*, 530 U.S. 428, 434 (2000).  Further, "cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare."  *Berkemer v. McCarty*, 468 U.S. 420, 433, n.20 (1984).  Brown provides neither a "colorable argument" that Detective Hartman was lying about Brown voluntarily resuming communications nor an allegation that the statement was offered before Brown signed the form invoking his right to counsel.

Under subpart E, Brown only provides the collateral allegation that law enforcement failed to inform him about his right to counsel.  Brown fails to show that his counsel had reason to attack the validity of Brown's *Miranda* warnings and that this failure was constitutionally deficient performance.  Brown also fails to show by "clear and convincing evidence," as required by section 2254(e)(1), that the post-conviction court unreasonably determined the fact that Brown was specifically informed of his right to counsel when he invoked his rights.  (Respondent's Exhibit 9 at 7)  Brown cannot overcome the "doubly deferential" standard afforded to decisions of trial counsel and the post-conviction court under *Strickland* and AEDPA.  *Cullen v. Pinholster*, ___ U.S. ___, 130 S. Ct. 1855, 1866 (2010).  Because the record refutes Brown's claim that law enforcement did not inform him of his right to counsel and because trial counsel correctly advised Brown about his *Miranda* rights, subpart E lacks merit.

Accordingly, Brown's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk shall enter a judgment against Brown and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

Brown is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate

of appealability ("COA").  Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a certificate of appealability, Brown must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise.  See 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because Brown fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Brown cannot meet *Slack*'s prejudice requirement.  529 U.S. at 484.  Finally, Brown is not entitled to appeal *in forma pauperis* because he is not entitled to a certificate of appealability.

Accordingly, a certificate of appealability is **DENIED**.  Leave to proceed *in forma pauperis* on appeal is **DENIED**.  Brown must pay the full $455 appellate filing fee without installments unless the Circuit Court allows Brown to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on July 18, 2012.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE